IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM E. PAPPAS, | : CASE NO. 1:04 CV 01641 |
| Plaintiff | : |
| -vs- | : MEMORANDUM OF OPINION AND |
| | : ORDER GRANTING DEFENDANT'S |
| ROBERT L. NASH, et al. | : MOTION FOR JUDGMENT ON THE |
| | : PLEADINGS |
| Defendants. | : |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter arose from a series of property inspections, dating on or about 23 October 2002, 1 July 2003, and 25 May 2004, conducted in connection with the sale of real property, located at 20624 Alameda Parkway, Highland Hills, Ohio 44128 (hereinafter "the property"). (Complaint ¶¶ 10, 15, & 18). After the latter two inspections revealed a number of violations not cited in the initial inspection report, on which William Pappas relied for his purchase of the property, the plaintiff, Mr. Pappas, brought a three-count claim in this Court, pursuant to 42 U.S.C. § 1983, against the Mayor of the Village of Highland Hills ("Village"), Robert Nash; the Inspector for the Village, Charles Day; and Paula Phelps, the owner from whom he purchased the property. Mr. Pappas' complaint alleges Deprivation of Rights under 42 U.S.C. § 1983, Fraud, and Conspiracy to Defraud against all named defendants. (Complaint ¶¶ 30-47).

Before the Court is defendants' Federal Rule of Civil Procedure 12(c)[1] motion for judgment on the pleadings, which asserts first, Mr. Pappas' §1983 claim fails as a matter of law, and second, the defendants are entitled to qualified immunity.[2] (Docket 14).  Mr. Pappas filed a response in opposition to the defendants' motion for judgment on the pleadings. (Docket No. 20).

For the reasons set forth below, the Court will dismiss Mr. Pappas' complaint with prejudice.

## BACKGROUND

On or about October 2002, plaintiff Mr. Pappas entered into negotiations with defendant Ms. Phelps to purchase the real property located in the Village of Highland Hills, then owned by Ms. Phelps. (Complaint ¶8).  Prior to closing on the purchase agreement, the Village required Ms. Phelps to have the property inspected by the Village Inspector, defendant Mr. Day. (Complaint ¶9).  On or about 23 October 2002, the Village Inspector issued an inspection permit, confirming the property conformed to the applicable building code provisions.

---

[1] Motion for Judgment on the Pleadings:
After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
Fed. R. Civ. P. 12(c).

[2] Although the motion does not so specify, presumably the defendants make the qualified immunity argument for Mr. Nash (the Mayor) and Mr. Day (the Inspector), but not for Ms. Phelps (a private citizen). As the Court does not find a violation of due process the Court does not reach the parties' qualified immunity argument.

2

(Complaint ¶10). Relying on the validity of the inspection permit, Mr. Pappas purchased the property from Ms. Phelps. (Complaint ¶11).

Pursuant to a local Village ordinance, Mr. Pappas then had the Village Inspector inspect the property on 1 July 2003 (9 months later) and again on 25 May 2004 (19 months later). (Complaint ¶¶14 & 15). Although Mr. Pappas claims to have maintained the property in substantially the same condition as when it was inspected on 23 October 2002, the Village Inspector found first two and then fourteen violations, respectively, during these subsequent two property inspections. (Complaint ¶¶ 13, 16 & 18).

On or about July 2004, Mr. Pappas then entered into a sales agreement to sell the property to Mr. Leonard Burris. (Complaint ¶12). In order to obtain the Inspection Permit required to sell the property, Mr. Pappas complied with the July 2003 and May 2004 inspection reports, and incurred costs in excess of $20,000.00 in making the necessary repairs. (Complaint ¶¶20 & 21).

Mr. Pappas now claims the "issuance of the Inspection Permit to Ms. Phelps was a sham and a fraud" because, since he allegedly maintained the property in the same condition as he received it from Ms. Phelps, "all of the violations the Inspector found in July of 2003 and May of 2004 had to have been present on October 23, 2002." (Complaint ¶23). Mr. Pappas alleges the Village Inspector failed to report the violations back in 2002 "as a favor to Ms. Phelps," who is "the Mayor's family friend," and that the defendants "conspired to selectively enforce the law" to his detriment. (Complaint ¶¶23, 25 & 24).

**STANDARD OF REVIEW**

Fed. R. Civ. P. 12(c) provides in pertinent part, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  A Court may grant judgment on the pleadings if it determines the moving party is entitled to judgment as a matter of law.  Paskvan v. City of Cleveland Civil Service Com'n, 946 F.2d 1233, 1235 (6th Cir. 1991).  In making such a determination, the Court must construe the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded factual allegations.  Id.  However, the Court need not accept as true legal conclusions and unwarranted factual inferences.  Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998).

**LAW AND ANALYSIS**

In his first claim, Mr. Pappas alleges a "deprivation of rights" under 42 U.S.C. § 1983.  Mr. Pappas, further, alleges that defendants "caused Plaintiff to be deprived of rights secured under the Constitution and the laws of the United States." (Complaint, ¶ 31).  Mr. Pappas further maintains that "Defendants conspired to advance their personal agendas, which agendas resulted in the deprivation of Plaintiff's personal property rights, which are rights secured under the Constitution of the United States." (Complaint, ¶ 27).[3]

---

[3] Mr. Pappas' remaining claims all sound in state law: Fraud (Claim II); Conspiracy to Defraud (Claim III); Punitive Damages (Claim IV).  With regard to Mr. Pappas' Conspiracy to Defraud Claim, to the extent he has raised the conspiracy claim against the defendants alleging a conspiracy to violate the plaintiff's federally protected rights, the claim must be dismissed.  As this Circuit recognizes in matters such as the instant conspiracy claim, "vague and conclusory allegations unsupported by material facts" are insufficient to sustain a conspiracy claim under § 1983. Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir.1987).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutonally adequate procedures." Cleveland Bd. Of Educ. V. Loudermill, 470 U.S. 532, 541 (1985). The United States Supreme Court has repeatedly stated that procedural due process is "a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990); see also Mathews v. Eldridge, 424 U.S. 319, 334 (1976) ("'Due process is flexible and calls for such procedural protections as the particular situation demands,'" quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). While the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," Doherty, 75 F.3d 318, 323 (7th Cir. 1996), the state is not always required to provide that opportunity prior to effectuating a deprivation of property. Id.[4]

When considering claims for the violation of due process rights Courts in the Sixth Circuit are directed to entertain, first, whether the plaintiff has a property interest entitled to due process protection and, second, what process is then due. Leary v. Daeschner, 228 F.3d 729, 741-42 (6th Cir. 2000). The Court shall construe

---

[4] In Doherty, much like the inspection permit required of Mr. Pappas by Highland Hills, the plaintiff presented claims that the defendants had acted with an improper purpose in denying her application for a zoning certificate to operate a bingo hall and, further, had improperly closed a different bingo hall that she also ran, charging she had operated the hall without a proper license. The Seventh Circuit observed "it is clear from Ms. Doherty's complaint that the deprivation she complains of occurred, if at all, as the result of 'random and unauthorized' acts[,] [a]ccordingly, she was entitled only to postdeprivation remedies." 75 F.3d at 324. The Inspection Permit required by Highland Hills to allow Mr. Pappas to sell his property operated in the very same fashion as the zoning certificate did in Doherty – as a license enabling the owner to exercise further, regulated control over his or her property.

Mr. Pappas' property deprivation claim broadly, as a property claim in the building inspected by the municipality, and find that, as an initial matter, the plaintiff has a property interest entitled to due process protection.[5]

In seeking dismissal of this matter, the defendants rely upon the decision in Parratt v Taylor, 451 U.S. 527 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986) and its progeny, to argue that Mr . Pappas must both plead and prove the absence of adequate state remedies as an element of the constitutional tort in order to establish a claim for deprivation of property without due process under the Fourteenth Amendment.  As Mr. Pappas did not make the requisite pleading or prove the absence of state remedies, the defendants now seek a dismissal of the matter on the pleadings.

In Parratt v. Taylor, a state prisoner sued prison officials under 42 U.S.C. § 1983, alleging their negligent loss of a hobby kit he ordered from a mail-order catalog deprived him of property without due process of law, in violation of the Fourteenth Amendment. The Court of Appeals for the Eighth Circuit had affirmed the District Court's summary judgment in the prisoner's favor. The United States

---

[5]A narrow reading of Mr. Pappas' complaint would deny the plaintiff a property interest entitled to due process protection. In his complaint, Mr. Pappas claims a deprivation of due process – a lack of notice and opportunity to be heard – as the result of alleged improprieties in the Inspection Permit process carried out by Inspector Charles Day.  As such, Mr. Pappas is claiming an entitlement to a possible future license to sell his property, which the Inspection Permit provides.  Yet, when alleging a property interest in such a public benefit, the plaintiff must show "a legitimate claim of entitlement" to such interest.  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  Mr. Pappas has no property right in a possible future license, let alone one free of conditions, where the Highland Hills Inspectors are vested with broad discretion to grant or deny an Inspection Permit predicated on finding building code violations.  See Sanitation and Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 995 (2nd Cir. 1997) (finding no property interest in a prospective application for a license to be issued by a state or municipal agency).

Supreme Court reversed, holding the Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property, provided the state makes available a meaningful postdeprivation remedy.  As the Court explained,  "necessity of quick action by the State ⋯ when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." Parratt at 539.  The Court has further noted that either "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." Zinermon, 494 U.S. at 128, 110 S.Ct. at 984.  The scope of the holding in Parratt was broadened in Hudson v. Palmer 468 U.S. 517, 530-35 (1984), to encompass intentional conduct by state actors. ("An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause if a meaningful postdeprivation remedy for the loss is available").  See also Vicory v. Walton, 721 F.2d 1062, 1065 (6th Cir. 1983).

In responding to the defendants' motion to dismiss, the plaintiff relies upon the Sixth Circuit's decision in Moore v. Bd. Of Educ of Johnson City Schs., 134 F.3d 781, 785 (6th Cir. 1998).  Such reliance is unavailing.  In Moore, the Circuit Court found that a teacher who brought a § 1983 suit alleging deprivation of her procedural due process rights was, contra Parratt, "required neither to plead nor prove the inadequacy of post-termination state law remedies in order to prevail." Id.  Based on the facts in Moore, the Court reasoned that in an instance where a plaintiff alleges deprivation of due process pursuant to established state

7

procedures, rather than random, unauthorized acts, "it is both practicable and feasible for the state to provide pre-deprivation process to the aggrieved party." Id. See also, Mitchell Fankhauser, 375 F.3d 477, 481-84 (6th Cir. 2004) (discussing the application of Parratt and Moore in Sixth Circuit jurisprudence and applying Parratt only to random, unauthorized deprivations of property).

In the instant matter, Mr. Pappas was allegedly deprived of his property not as the result of an established state procedure that itself violates due process rights, but rather through the unauthorized or random act of fraud allegedly carried out by a municipal building inspector.  Moreover, given the sequence of events as conveyed in Mr. Pappas' complaint, no pre-deprivation hearing could have logically arisen where the building inspector allegedly failed to find violations in the property as owned prior to Mr. Pappas' purchase.  Nor could a pre-deprivation hearing have occurred prior to the inspections carried out under Mr. Pappas' ownership of the property.  Of such events, the United States Supreme Court, in Zinermon v. Burch, 494 U.S. 113, 128 (1990), established that "the Parratt rule comes into play" in just such instances where "postdeprivation tort remedies are all the process due, simply because they are the only remedies that the State could be expected to provide."

Accordingly, Mr. Pappas is advised that, in this instance, a due process claim for the deprivation of his alleged property interest is not cognizable in a federal district court where state courts provide a remedy for the deprivation of that property interest.  Hudson v. Palmer, 468 U.S. at 533; Parratt v. Taylor, 451 U.S. at

8

543. The municipality of Highland Hills and the State of Ohio provide such a remedy.

Pursuant to the Highland Hills Municipal Code, Chapter 1339 Enforcement & Penalty of the 1339.09 (Part Thirteen – Building Code), Mr. Pappas clearly has the right to appeal the results of the building code inspection. Section 1339.09 details the right to appeal, allowing:

> The owner, agent or operator of any structure or premises shall have the right to appeal the denial of an occupancy permit, or from any order of or written notice issued by the CBO or his assistant, within twenty days from the date such notice was given or mailed or order issued, and to appear before the Board of Zoning Appeals at a time and place fixed by the Board of Zoning Appeals to show cause why he should not comply with such notice. Such appeal shall be in writing. Failure to file a written appeal with the Board of Zoning Appeals within the time prescribed herein shall constitute a waiver of the right to appeal. Except in cases of emergency as set forth in Section 1339.04, filing of an appeal from any such notice shall suspend action on enforcement of such notice until the appeal is acted upon by the Board of Zoning Appeals.

The appeal need not terminate with the Board, as the Municipal Code further provides in Sections 1339.10 & 1339.11:

> 1339.10 POWERS OF THE BOARD OF ZONING APPEALS.
>
> The Board of Zoning Appeals shall hear appeals on decisions made by the CBO or by any administrative officer, in matters relating to this Code, for relief from any order, requirement, decision or determination, including the refusal, granting or revocation of permits, and may thence decide appeals by either reversing, affirming, wholly or in part, or modifying, such order, requirement, decision or determination. The Board shall also have the power to grant relief from the strict enforcement of this Housing Code if it finds that the decision of the CBO would cause undue economic hardship upon the property owner or in the event the property owner is capable of showing the Board by clear and convincing evidence that the property owner has insufficient funds to perform the work required by the Housing Code. In any such case, the Board upon the granting of

9

such relief, shall set a specific date in the future, not more than six
months from the date of its decision to review the reason for the
granting of such relief and may at that time order the improvement
completed or allow an additional extension of time.

1339.11   APPEAL FROM DECISIONS OF THE BOARD.

Any person or persons jointly or severally aggrieved by any
decision of the Board of Zoning Appeals and any officer, department,
division, board or bureau of the Village may appeal such decision to
the Common Pleas Court within the time permitted by law.

Not only does the state provide Mr. Pappas with post-deprivation remedies in challenging the inspection violations, the plaintiff also possesses a remedy to address his allegations of inspection tampering, under the Highland Hills Municipal Code, which allows:

1339.99   PENALTY.

Whoever violates any provision of this Housing Code, or any
rule or regulation promulgated thereunder, or fails to comply therewith
or with any written notice or written order issued thereunder, and
whoever interferes with, obstructs or hinders the CBO or his
assistant, while attempting to make a lawful inspection is guilty of a
misdemeanor of the third degree.  Each day such violation occurs or
continues shall constitute a separate offense.  Nothing herein shall
prevent the Village from taking such other lawful action as is
necessary to prevent or remedy any violation.

Mr. Pappas also has specific state law tort remedies and state appellate procedures available to review his alleged injury.  See O.R.C. 2506.01 (Title XXV)[6]

---

[6]2506.01 Appeal from decisions of any agency of any political subdivision
(A) Except as otherwise provided in sections 2506.05 to 2506.08 of the
Revised Code, and except as modified by this section and sections 2506.02
to 2506.04 of the Revised Code, every final order, adjudication, or decision
of any officer, tribunal, authority, board, bureau, commission, department, or
other division of any political subdivision of the state may be reviewed by the
court of common pleas of the county in which the principal office of the
political subdivision is located as provided in Chapter 2505. of the Revised

10

**CONCLUSION**

Accordingly, because Mr. Pappas has made no showing whatsoever regarding the inadequacy of state regulatory or common-law remedies, the Court must conclude the defendants are entitled to dismissal of the § 1983 claim pursuant to Fed. R. Civ. P. 12(c).  For the reasons set forth above, this matter is dismissed with prejudice.  As this Court lacks jurisdiction to hear the remaining counts of Mr. Pappas' complaint, this action shall be remanded to state court for further proceedings.

IT IS SO ORDERED.

                                            /s/Lesley Wells
                                            UNITED STATES DISTRICT JUDGE

Dated: 28 September 2006

---

Code.

(B) The appeal provided in this section is in addition to any other remedy of appeal provided by law.

 (C) As used in this chapter, "final order, adjudication, or decision" means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding.